# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | | |
|---|---|---|
| **ALEXIA VICTORIA GAVIN** <br> *Plaintiff,* <br><br>    **-v-** <br><br> **MANATEE COUNTY, FLORIDA;** <br> **SHERIFF RICK WELLS, in his official** <br> **capacity as Sheriff of Manatee County,** <br> **Florida; DEPUTY ROBERT PEREYRA,** <br> **JR., in his individual capacity; and** <br> **JOHN/JANE DOE DEPUTIES 1–5, in** <br> **their individual capacities,** <br> *Defendants.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No._____ <br><br><br> **COMPLAINT AND JURY DEMAND** |

## CIVIL ACTION

*This action alleges, inter alia, violations of the Fourth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, arising from the warrantless and non-consensual entry into Plaintiff Alexia Gavin's home, her arrest without probable cause, the excessive force used against her during jail intake, and the failure of multiple Manatee County deputies to intervene despite having the opportunity and duty to do so. Plaintiff further alleges malicious prosecution based on the continuation of criminal charges unsupported by evidence, as well as state-law torts arising from Defendants' unlawful entry, arrest, and use of force. These violations caused Plaintiff significant physical injury, emotional trauma, economic loss, and destabilization of her family life. Plaintiff seeks redress for these constitutional and statutory violations and for the severe harms inflicted upon her as a result of Defendants' conduct.*

Plaintiff, ALEXIA VICTORIA GAVIN, by and through her attorneys, LLG National Law Group, and by way of Complaint, brings this action for damages and other equitable relief against Defendants, MANATEE COUNTY, FLORIDA; SHERIFF RICK WELLS, in his official capacity as Sheriff of Manatee County, Florida; DEPUTY ROBERT PEREYRA, JR., in his individual capacity; and JOHN/JANE DOE DEPUTIES 1–5, in their individual capacities, alleging as follows:

1

**INTRODUCTION**

1.      This civil rights action arises from the warrantless, non-consensual entry into Plaintiff Alexia Gavin's home on March 30, 2024, by deputies of the Manatee County Sheriff's Office ("MCSO"). Deputies entered her residence to affect a routine felony arrest despite having no warrant, no consent, and no exigent circumstances, in direct violation of the Fourth Amendment and clearly established law prohibiting home entry absent judicial authorization.

2.      During the encounter, deputies falsely asserted that a capias warrant existed for Plaintiff's arrest. No such warrant had been issued. Relying on this fabricated claim, deputies crossed the threshold of Plaintiff's home and seized her without probable cause, despite contemporaneous evidence, including the alleged victim's own statements, demonstrating that Plaintiff was the victim, not the aggressor, in the underlying domestic incident.

3.      After the unlawful arrest, Plaintiff was transported to the Manatee County Jail, where she was subjected to excessive force during intake. She was held in the jail for three days. A correctional officer forcefully twisted Plaintiff's wrist, causing acute pain, swelling, and functional impairment.

4.      Plaintiff sought emergency medical treatment immediately upon release from the jail. Hospital records from HCA Florida Blake Hospital dated April 1, 2024, document bilateral wrist sprains and confirm the physical injuries inflicted during intake.

5.      The criminal case arising from the unlawful arrest collapsed. The State Attorney dismissed the felony charge on May 16, 2024, and later entered a Nolle Prosequi on March 25, 2025, dismissing the remaining misdemeanor charge. Plaintiff therefore endured arrest, incarceration, and physical injury without any lawful basis.

6.      As a direct and proximate result of Defendants' conduct, Plaintiff suffered

constitutional violations, physical injury, emotional trauma, economic loss, loss of housing, and severe disruption to her family stability. She brings this action to obtain redress for the harms inflicted and to hold Defendants accountable under 42 U.S.C. §1983 and Florida law.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the Constitution and laws of the United States, including 42 U.S.C. § 1983, for violations of the Fourth Amendment. Jurisdiction is also proper under 28 U.S.C. § 1343(a)(3)–(4), which provides original jurisdiction over civil rights actions seeking redress for the deprivation of constitutional rights under color of state law.

8.      This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same nucleus of operative facts as the federal constitutional violations: namely, the unlawful entry into Plaintiff's home, her arrest without probable cause, and the use of excessive force during her detention. Exercising supplemental jurisdiction promotes judicial economy, convenience, and fairness.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1)–(2) because all Defendants reside in Florida and all events giving rise to Plaintiff's claims occurred in Manatee County, Florida, which lies within the Tampa Division of the Middle District of Florida. The unlawful entry, arrest, detention, and resulting injuries were all inflicted within this District, making venue both proper and convenient.

## PARTIES

10.     At all times relevant hereto, Plaintiff Alexia Victoria Gavin is a resident of Bradenton, Florida.

11.     At all times relevant hereto, MANATEE COUNTY, FLORIDA is a political subdivision of the State of Florida. Manatee County is responsible for funding, equipping, and

3

providing operational oversight to the Manatee County Sheriff's Office ("MCSO"), and is a proper defendant for Plaintiff's state-law tort claims asserted under Florida law. Manatee County may be served through the Manatee County Attorney's Office, 1112 Manatee Avenue West, Bradenton, Florida 34205.

12.     At all times relevant hereto, Defendant SHERIFF RICK WELLS is the elected Sheriff of Manatee County and the final policymaker for MCSO with respect to law-enforcement operations, training, supervision, and discipline. He is sued in his official capacity for purposes of Monell-type liability and vicarious liability under Florida law. Sheriff Wells may be served at the Manatee County Sheriff's Office, 600 U.S. Highway 301 Blvd. West, Bradenton, Florida 34205.

13.     At all times relevant hereto, Defendant DEPUTY ROBERT PEREYRA, JR. was, at all times relevant, a sworn deputy sheriff employed by MCSO and acting under color of state law. He participated directly in the unlawful entry and arrest of Plaintiff. He is sued in his individual capacity for violations of clearly established federal constitutional rights. He may be served at the Manatee County Sheriff's Office, 600 U.S. Highway 301 Blvd. West, Bradenton, Florida 34205.

14.     At all times relevant hereto, Defendants JOHN/JANE DOE DEPUTIES 1–5 were sworn deputy sheriffs employed by MCSO who were present during the unlawful entry, arrest, transport, or jail intake of Plaintiff. Each participated in, directed, or failed to intervene in the constitutional violations described herein. They are sued in their individual capacities. Their true identities will be added when ascertained through discovery.

15.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave from the court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

## FACTUAL BACKGROUND

17.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

18.     On March 29, 2024, deputies of the Manatee County Sheriff's Office ("MCSO") were dispatched to Plaintiff's residence in response to a domestic-disturbance call involving Plaintiff and her former partner, Kelvin.

19.     Upon arrival, deputies interviewed Kelvin, who admitted that he had physically assaulted Plaintiff during the incident including pushing her feet off the couch and taking her phone. According to the official MCSO report, Kelvin stated that he: "snatched [Plaintiff's] phone… pushed [her] on the ground… dragged [her] in the dirt… hit [her] again… [and] used a pressure point under [her] neck…".

20.     Kelvin further admitted that he seized Plaintiff's phone to stop her livestream of the assault, walked outside with it, and continued to physically restrain her while she attempted to retrieve it.

21.     Plaintiff's sworn affidavit corroborates Kelvin's admissions and describes the assault in detail, including being dragged, struck, choked, and having her phone forcibly taken.

22.     Despite Kelvin's admissions, Plaintiff's visible injuries, and corroborating witness statements from individuals who viewed the livestream, deputies treated Plaintiff, not Kelvin, as the aggressor.

23.     Deputies did not arrest Kelvin, did not seek a warrant for his arrest, and did not document any probable-cause basis to treat Plaintiff as the primary aggressor. Plaintiff requested via an internal affairs complaint that MCSO arrest and charge Kelvin but this request was ignored.

24.     Deputies prepared a capias request alleging that Plaintiff had threatened Kelvin with a knife. The report omits Kelvin's admissions of physical violence, omits Plaintiff's injuries,

and omits the livestream witnesses who confirmed Plaintiff was the victim.

25.    Upon information and belief, the capias request was drafted without judicial review, and no judge issued a warrant for Plaintiff's arrest.

26.    Upon information and belief, Deputies nevertheless represented to other officers, and later to Plaintiff, that a capias warrant existed.

27.    On March 30, 2024, deputies returned to Plaintiff's residence to arrest her.

28.    Deputies falsely asserted that a capias warrant had been issued. This statement was untrue. No warrant existed.

29.    Deputies did not request consent to enter Plaintiff's home, and Plaintiff did not give consent.

30.    Deputies did not identify any exigent circumstances because there were none. The alleged offense had occurred the previous day; Plaintiff was at home with her children; no threat to life or safety existed; and no evidence was at risk of destruction.

31.    Despite the absence of a warrant, consent, or exigency, deputies entered Plaintiff's home, crossed the threshold, and seized her inside her residence.

32.    The entry violated clearly established Fourth Amendment law prohibiting warrantless home entry to effect a routine arrest.

33.    Deputies arrested Plaintiff inside her home without probable cause. The arrest was based on a materially incomplete and misleading narrative that contradicted the statements of the alleged victim and the physical evidence.

34.    Plaintiff was transported to the Manatee County Jail for booking and intake.

35.    During intake, a correctional officer, employed and supervised by the MCSO, applied unnecessary and excessive force by forcefully twisting Plaintiff's wrist, causing immediate pain, swelling, and loss of mobility.

36.    Plaintiff repeatedly reported pain but was not provided adequate medical attention while incarcerated.

37.    Immediately upon release, Plaintiff sought emergency medical care at HCA Florida Blake Hospital on April 1, 2024.

38.    Hospital records confirm bilateral wrist sprains consistent with the force used during intake.

39.    Plaintiff was instructed to follow up with orthopedics and was prescribed pain management and activity restrictions.

40.    The felony aggravated assault charge was formally dropped on May 16, 2024.

41.    On March 25, 2025, the State Attorney entered a Nolle Prosequi dismissing the remaining misdemeanor charge of resisting without violence.

42.    No evidence ever supported probable cause for Plaintiff's arrest.

43.    As a direct and foreseeable result of Defendants' unlawful entry, false arrest, and use of excessive force, Plaintiff suffered significant physical injury to both wrists, accompanied by ongoing pain and functional limitations; severe emotional distress and psychological trauma; reputational harm arising from the baseless criminal accusations; the loss of her employment and financial stability; the loss of her housing and the resulting destabilization of her family life; and long-term psychological harm that continues to affect her daily functioning and well-being.

44.    Plaintiff's injuries and losses were the foreseeable result of the unlawful entry, false arrest, excessive force, and the continuation of criminal charges unsupported by probable cause.

**COUNT I - 42 U.S.C. §1983**
**<u>UNLAWFUL WARRANTLESS ENTRY (FOURTH AMENDMENT)</u>**
*(Against Deputy Pereyra in his Individual Capacity)*

45.    Plaintiff repeats and incorporates by reference only the factual allegations

7

necessary to state this claim, and expressly excludes all other allegations, including any legal conclusions or statements of law.

46.    On March 30, 2024, Deputy Robert Pereyra, acting under color of state law and within the course and scope of his employment with the Manatee County Sheriff's Office, entered Plaintiff's home without a warrant, without consent, and without exigent circumstances, in violation of the Fourth Amendment.

47.    At the time of entry, no capias warrant existed for Plaintiff's arrest. No judicial officer had authorized entry into Plaintiff's residence, and no officer possessed a valid arrest warrant or search warrant.

48.    Deputy Pereyra and other deputies falsely asserted that a capias warrant had been issued, and used that false assertion to justify crossing the threshold of Plaintiff's home. This representation was knowingly false or made with reckless disregard for the truth.

49.    Plaintiff did not consent to the deputies' entry. Deputies did not request consent, did not obtain consent, and did not provide Plaintiff an opportunity to refuse entry.

50.    No exigent circumstances existed. The alleged offense had occurred the previous day; Plaintiff was inside her home with her children; she was not fleeing; no one was in danger; and no evidence was at risk of destruction. The entry was made solely to affect a routine, non-emergency arrest.

51.    The warrantless entry into Plaintiff's home violated clearly established law, including the longstanding rule that officers may not enter a private residence to effect an arrest absent a valid warrant or true exigency. A reasonable officer in Deputy Pereyra's position would have known that the conduct described herein was unlawful.

52.    The constitutional prohibition on warrantless home entry absent a valid arrest warrant or exigent circumstances has been clearly established for decades, including but not

limited to *Payton v. New York*, 445 U.S. 573 (1980), which held that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." No reasonable officer could have believed that a fabricated claim of a non-existent capias warrant satisfied the Fourth Amendment's strict requirements.

53.     As a direct and proximate result of Deputy Pereyra's unconstitutional entry, Plaintiff was unlawfully seized inside her home, arrested without probable cause, transported to jail, subjected to excessive force during intake, and suffered physical injury, emotional distress, reputational harm, economic loss, and destabilization of her family life.

54.     Deputy Pereyra's conduct was willful, wanton, malicious, and in reckless disregard of Plaintiff's constitutional rights, entitling Plaintiff to compensatory damages and punitive damages under 42 U.S.C. § 1983.

**COUNT II - 42 U.S.C. §1983**
**FALSE ARREST / FALSE IMPRISONMENT (FOURTH AMENDMENT)**
*(Against Deputy Pereyra and Doe Defendants in their Individual Capacities)*

55.     Plaintiff repeats and incorporates by reference only the factual allegations necessary to state this claim, and expressly excludes all other allegations, including any legal conclusions or statements of law.

56.     On March 30, 2024, Deputy Robert Pereyra and Doe Defendant Deputies 1–5, acting under color of state law, arrested and detained Plaintiff without probable cause, in violation of the Fourth Amendment.

57.     At the time of Plaintiff's arrest, the deputies lacked any objectively reasonable basis to believe that Plaintiff had committed a criminal offense. The alleged domestic-violence incident had occurred the previous day, and the only contemporaneous evidence, including Kelvin's own statements and Plaintiff's injuries, demonstrated that Plaintiff was the victim, not the aggressor.

58.     Deputies relied on a materially incomplete and misleading narrative that omitted

Kelvin's admissions of physical violence, omitted Plaintiff's visible injuries, and ignored corroborating witness statements from individuals who viewed the livestream of the assault. No reasonable officer could have concluded that probable cause existed under these circumstances.

59.     These omissions were not mere negligence but constituted reckless disregard for the truth. Deputies were in possession of exculpatory evidence, including Kelvin's own admissions of assault, Plaintiff's documented injuries, and corroborating witness statements, that directly contradicted the narrative used to justify Plaintiff's arrest. The deliberate exclusion of this evidence from the probable-cause narrative renders the arrest constitutionally unreasonable under clearly established Fourth Amendment standards.

60.     Deputies falsely asserted that a capias warrant had been issued for Plaintiff's arrest. This assertion was untrue. No warrant existed, and no judicial officer had authorized Plaintiff's arrest or the entry into her home.

61.     Deputies arrested Plaintiff inside her home, after unlawfully entering the residence without a warrant, without consent, and without exigent circumstances. The arrest was therefore unlawful both because it lacked probable cause and because it occurred inside the home in violation of the Fourth Amendment.

62.     Following the arrest, Plaintiff was transported to the Manatee County Jail and detained for several days, during which she suffered physical pain, emotional distress, and the cascading harms described herein. This detention was the direct and foreseeable result of the unlawful arrest.

63.     The criminal charges arising from the arrest were later abandoned. The felony aggravated assault charge was dropped on May 16, 2024, and the State Attorney entered a Nolle Prosequi dismissing the remaining misdemeanor charge on March 25, 2025. The dismissal of all charges confirms the absence of probable cause at the time of arrest.

64.    Even under the "arguable probable cause" standard applicable to qualified immunity, no reasonable officer could have believed that probable cause existed where the alleged victim admitted to assaulting Plaintiff, Plaintiff displayed visible injuries consistent with those admissions, and witness statements corroborated Plaintiff's account. The facts known to deputies at the time foreclose any claim of arguable probable cause.

65.    The conduct of Deputy Pereyra and the Doe Defendants was willful, malicious, reckless, and in deliberate disregard of Plaintiff's constitutional rights. Their actions caused Plaintiff to suffer loss of liberty, physical injury, emotional trauma, reputational harm, economic loss, and long-term psychological harm.

66.    Plaintiff is entitled to compensatory damages and punitive damages under 42 U.S.C. § 1983 for the violation of her clearly established Fourth Amendment rights.

**COUNT III - 42 U.S.C. §1983**
**<u>EXCESSIVE FORCE (FOURTH AMENDMENT)</u>**
***(Against All Individual Defendants in Their Individual Capacities)***

67.    Plaintiff repeats and incorporates by reference only the factual allegations necessary to state this claim, and expressly excludes all other allegations, including any legal conclusions or statements of law.

68.    On March 30, 2024, after unlawfully arresting Plaintiff inside her home, Deputy Pereyra and Doe Defendant Deputies 1–5, acting under color of state law, subjected Plaintiff to excessive and unreasonable force during her transport and intake at the Manatee County Jail.

69.    During the intake process, a correctional officer acting in concert with the arresting deputies forcefully twisted Plaintiff's wrist, applying torque and pressure far beyond what was necessary for any legitimate law-enforcement purpose. Plaintiff was compliant, restrained, and posed no threat to officer safety or institutional security at the time the force was applied.

70.    The force used was objectively unreasonable under the circumstances. Plaintiff was

not resisting, attempting to flee, or engaging in any conduct that would justify the use of physical force. The twisting of her wrist served no lawful purpose and was applied in a manner designed to inflict pain, not to maintain order or ensure safety.

71.    Plaintiff immediately experienced acute pain, swelling, and loss of mobility in both wrists. She reported her pain to officers but was not provided adequate medical attention while detained.

72.    Upon release, Plaintiff sought emergency medical treatment at HCA Florida Blake Hospital on April 1, 2024, where she was diagnosed with bilateral wrist sprains, consistent with the excessive force inflicted during intake.

73.    The excessive force used against Plaintiff violated clearly established Fourth Amendment law, including the principle that officers may not use gratuitous, unnecessary, or disproportionate force against a restrained, compliant, and non-threatening individual.

74.    The force used against Plaintiff was gratuitous because she was fully restrained, compliant, and posed no threat to officer safety or institutional order. The twisting of her wrist served no legitimate penological or law-enforcement purpose and was applied solely to inflict pain. Courts have long held that such gratuitous force against a restrained detainee violates clearly established Fourth Amendment rights.

75.    Each Defendant present during the intake process either directly participated in the use of excessive force or failed to intervene despite having the opportunity and duty to prevent the constitutional violation.

76.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injury, pain, emotional distress, medical expenses, and long-term functional impairment, as well as the broader harms described throughout this Complaint.

77.    The conduct of the individual Defendants was willful, malicious, reckless, and in

deliberate disregard of Plaintiff's constitutional rights, entitling Plaintiff to compensatory and punitive damages under 42 U.S.C. § 1983.

**COUNT IV - 42 U.S.C. §1983**
**MONELL LIABILITY — FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE**
*(Against Defendant Sheriff Wells)*

78.    Plaintiff repeats and incorporates by reference only the factual allegations necessary to state this claim, and expressly excludes all other allegations, including any legal conclusions or statements of law.

79.    At all times relevant, Sheriff Rick Wells, in his official capacity as Sheriff of Manatee County, was the final policymaker for the Manatee County Sheriff's Office ("MCSO") with respect to law-enforcement operations, training, supervision, discipline, and the development and enforcement of policies and customs governing deputy conduct.

80.    The constitutional violations inflicted upon Plaintiff, including the warrantless entry into her home, false arrest without probable cause, excessive force during jail intake, and the failure of deputies to intervene, were the direct and foreseeable result of longstanding, widespread, and well-settled customs, practices, and failures attributable to Sheriff Wells in his policymaking capacity.

81.    Sheriff Wells maintained a custom of permitting deputies to enter private residences without warrants, without consent, and without exigent circumstances, particularly in domestic-disturbance contexts, and failed to implement adequate training or supervision to prevent unconstitutional home entries.

82.    Sheriff Wells further maintained a custom of accepting incomplete, misleading, or fabricated probable-cause narratives, including deputies' reliance on unverified assertions that a "capias warrant" existed, without requiring confirmation of judicial authorization before entering a home or arresting an individual.

83. Sheriff Wells failed to train deputies on the constitutional limits of home entry, the requirement of judicial authorization for in-home arrests, the proper assessment of probable cause, the prohibition on gratuitous force against restrained detainees, and the duty to intervene when fellow officers engage in unlawful conduct.

84. Sheriff Wells also failed to supervise or discipline deputies and jail personnel who engaged in unlawful entries, false arrests, excessive force, or dishonesty in reports. This pattern of non-discipline communicated to deputies that constitutional violations would be tolerated and would not result in corrective action.

85. Upon information and belief, prior incidents involving unlawful home entries, improper reliance on non-existent warrants, and the use of unnecessary force during jail intake were brought to the attention of supervisory personnel within MCSO. Despite this notice, Sheriff Wells failed to implement corrective training, revise deficient policies, or impose discipline. This longstanding pattern placed Sheriff Wells on actual or constructive notice that constitutional violations were likely to recur absent meaningful intervention.

86. These failures to train, supervise, and discipline were so obvious, and the likelihood of constitutional violations so high, that Sheriff Wells' inaction constituted deliberate indifference to the rights of individuals such as Plaintiff.

87. The unconstitutional customs, policies, and failures described above were the moving force behind the violations of Plaintiff's Fourth Amendment rights, including the unlawful entry into her home, her false arrest, the excessive force used during intake, and the resulting physical, emotional, and economic harms.

88. As a direct and proximate result of Sheriff Wells' Monell violations, Plaintiff suffered the injuries and damages described throughout this Complaint and is entitled to compensatory damages, attorneys' fees, and all other relief available under 42 U.S.C. § 1983.

## COUNT V
## FALSE ARREST / FALSE IMPRISONMENT (FLORIDA LAW)
### (Against Defendant Sheriff Wells)

89.     Plaintiff repeats and incorporates by reference only the factual allegations necessary to state this claim, and expressly excludes all other allegations, including any legal conclusions or statements of law.

90.     On March 30, 2024, deputies of the Manatee County Sheriff's Office, including Deputy Pereyra and Doe Defendant Deputies 1–5, acting within the course and scope of their employment, intentionally restrained and detained Plaintiff against her will and without lawful authority, constituting false arrest and false imprisonment under Florida law.

91.     At the time of the arrest, the deputies lacked probable cause to believe Plaintiff had committed any criminal offense. The underlying domestic incident had occurred the previous day, and the only credible evidence, including Kelvin's own admissions and Plaintiff's visible injuries, established that Plaintiff was the victim, not the perpetrator.

92.     Deputies falsely asserted that a capias warrant existed for Plaintiff's arrest. No such warrant had been issued by any judge, and no judicial authorization existed for the arrest or for entry into Plaintiff's home.

93.     Deputies entered Plaintiff's residence without a warrant, without consent, and without exigent circumstances, and seized her inside her home for a routine, non-emergency arrest. Such conduct is unlawful under Florida law and renders the arrest and subsequent detention invalid.

94.     Plaintiff was transported to the Manatee County Jail and detained for several days as a direct result of the unlawful arrest. During this detention, Plaintiff suffered physical pain, emotional distress, and the cascading harms described throughout this Complaint.

95.     The criminal charges arising from the arrest were later abandoned. The felony

15

charge was dropped on May 16, 2024, and the State Attorney entered a Nolle Prosequi dismissing the remaining misdemeanor charge on March 25, 2025, confirming the absence of probable cause.

96.     At all times relevant, the deputies involved were acting within the course and scope of their employment with the Manatee County Sheriff's Office. Accordingly, Sheriff Rick Wells, in his official capacity, is vicariously liable under the doctrine of respondeat superior for the false arrest and false imprisonment committed by his deputies.

97.     As a direct and proximate result of the unlawful arrest and detention, Plaintiff suffered physical injury, emotional distress, reputational harm, economic loss, and long-term psychological harm.

98.     Plaintiff is entitled to recover compensatory damages, costs, and all other relief available under Florida law.

**COUNT VI**
**BATTERY (FLORIDA LAW)**
*(Against Defendant Sheriff Wells)*

99.     Plaintiff repeats and incorporates by reference only the factual allegations necessary to state this claim, and expressly excludes all other allegations, including any legal conclusions or statements of law.

100.    On March 30, 2024, while Plaintiff was being booked into the Manatee County Jail following her unlawful arrest, a correctional officer acting in concert with Deputy Pereyra and Doe Defendant Deputies 1–5, and within the course and scope of employment with the Manatee County Sheriff's Office, intentionally applied harmful and offensive force to Plaintiff's person.

101.    Specifically, during the intake process, the officer forcefully twisted Plaintiff's wrist, applying torque and pressure far beyond what was necessary for any legitimate law-enforcement purpose. Plaintiff was compliant, restrained, and posed no threat to officer safety or institutional order at the time the force was used.

16

102. The physical contact was intentional, unprivileged, and unconsented-to, and constitutes battery under Florida law. No reasonable officer would have believed such force was lawful or necessary under the circumstances.

103. As a direct and proximate result of the battery, Plaintiff suffered immediate and significant pain, swelling, and loss of mobility in both wrists. Plaintiff sought emergency medical treatment at HCA Florida Blake Hospital on April 1, 2024, where she was diagnosed with bilateral wrist sprains, consistent with the force inflicted during intake.

104. At all times relevant, the officer who applied the force, and the deputies who facilitated or failed to intervene in the intake process, were acting within the course and scope of their employment with the Manatee County Sheriff's Office. Accordingly, Sheriff Rick Wells, in his official capacity, is vicariously liable under the doctrine of respondeat superior for the battery committed by his employees.

105. As a result of the battery, Plaintiff suffered physical injury, pain, emotional distress, medical expenses, and long-term functional impairment, as well as the broader harms described throughout this Complaint.

106. Plaintiff is entitled to recover compensatory damages, costs, and all other relief available under Florida law.

### COUNT VII
### NEGLIGENT TRAINING, SUPERVISION, AND OPERATIONAL OVERSIGHT
### (FLORIDA LAW)
### *(Against Defendants Manatee County and Sheriff Wells)*

107. Plaintiff repeats and incorporates by reference only the factual allegations necessary to state this claim, and expressly excludes all other allegations, including any legal conclusions or statements of law.

108. At all times relevant, Manatee County and Sheriff Rick Wells, in his official capacity, were responsible for the administrative, operational, and non-discretionary functions of

17

the Manatee County Jail, including the hiring, retention, training, supervision, and oversight of correctional personnel assigned to intake, booking, and detainee handling.

109.    Defendants owed Plaintiff a duty of reasonable care to ensure that jail intake personnel were properly trained and supervised in the safe handling of detainees, the use of force on restrained individuals, the accommodation of medically vulnerable detainees, and the implementation of established intake and medical-screening procedures.

110.    Defendants breached these duties by failing to implement adequate operational training, failing to supervise intake personnel, and failing to enforce established policies governing the safe handling of detainees during booking. These failures were administrative and operational in nature, not discretionary law-enforcement decisions, and therefore fall within the scope of liability permitted under Florida Statutes § 768.28.

111.    Defendants knew or should have known that intake personnel routinely engaged in unsafe handling of detainees, including the unnecessary application of force on compliant individuals, the failure to accommodate medical vulnerabilities, and the failure to follow established medical-screening protocols. Despite this knowledge, Defendants failed to implement corrective training, supervision, or administrative oversight.

112.    Defendants further failed to ensure that intake personnel were trained to identify and respond appropriately to detainees with medical devices, pre-existing injuries, or conditions requiring modified handling, thereby creating a foreseeable risk of physical injury to medically vulnerable detainees such as Plaintiff.

113.    As a direct and proximate result of Defendants' negligent operational oversight, Plaintiff was subjected to unnecessary force during intake, resulting in physical injury, pain, swelling, loss of mobility, emotional distress, medical expenses, and the long-term harms described throughout this Complaint.

114.    The risk that inadequately trained or supervised intake personnel would mishandle medically vulnerable detainees was foreseeable and well-known within jail operations. The absence of proper training on safe handling techniques, medical-screening protocols, and the accommodation of pre-existing injuries created a substantial and predictable risk of physical harm to detainees such as Plaintiff. Defendants' failure to address these operational deficiencies directly caused the injuries Plaintiff sustained.

115.    Pursuant to Florida Statutes § 768.28, Manatee County and Sheriff Wells, in his official capacity, are liable for the negligent acts and omissions of their employees committed within the course and scope of employment.

116.    Plaintiff is entitled to compensatory damages, costs, and all other relief available under Florida law.

**COUNT VIII**
**FAILURE TO INTERVENE (42 U.S.C. § 1983)**
*(Against Defendants MCSO Doe Deputies 1–5)*

117.    Plaintiff repeats and incorporates by reference only the factual allegations necessary to state this claim, and expressly excludes all other allegations, including any legal conclusions or statements of law.

118.    At all times relevant, Doe Defendant Deputies 1–5, acting under color of state law and within the course and scope of their employment with the Manatee County Sheriff's Office ("MCSO"), were present during the unlawful entry into Plaintiff's home, her arrest without probable cause, her transport to the Manatee County Jail, and the excessive force used against her during intake.

119.    Each Doe Defendant observed, or had actual knowledge of, the constitutional violations being committed by fellow deputies and correctional personnel, including:

    a.    the unlawful entry into Plaintiff's home without a warrant, consent, or exigent

19

circumstances;

b. the arrest of Plaintiff without probable cause; and

c. the unnecessary and excessive twisting of Plaintiff's wrist during intake while she was restrained and compliant.

120. Each Doe Defendant had a reasonable opportunity and the ability to intervene to prevent or mitigate these constitutional violations, including by stopping the unlawful entry, preventing the arrest, correcting the false assertion that a capias warrant existed, or stopping the use of excessive force during intake.

121. Despite having the opportunity and duty to act, the Doe Defendants failed to intervene, thereby allowing the violations of Plaintiff's Fourth Amendment rights to occur and continue.

122. Intervention was feasible because the constitutional violations unfolded over a period of time, including the deputies' entry into the home, the arrest inside the residence, the transport to the jail, and the intake process. Each Doe Defendant had sufficient time and opportunity to prevent or mitigate the violations but failed to do so.

123. The duty of law-enforcement officers to intervene in the face of a fellow officer's unconstitutional conduct was clearly established at the time of the events at issue, and a reasonable officer in the Doe Defendants' position would have known that failing to act violated Plaintiff's constitutional rights.

124. As a direct and proximate result of the Doe Defendants' failure to intervene, Plaintiff suffered the unlawful entry into her home, false arrest, excessive force, physical injury, emotional distress, economic loss, and the long-term harms described throughout this Complaint.

125. Plaintiff is entitled to compensatory damages and punitive damages under 42 U.S.C. § 1983 for the violation of her clearly established constitutional rights.

126.    The identities of Doe Defendants 1–5 are presently unknown despite reasonable efforts to ascertain them. Plaintiff will amend this Complaint to substitute their true names once identified through discovery.

## DAMAGES

127.    As a direct and proximate result of the conduct of all Defendants, Plaintiff suffered significant physical injuries, including bilateral wrist sprains, acute pain, swelling, reduced mobility, and the need for emergency medical evaluation and follow-up care. These injuries continue to impair Plaintiff's daily functioning.

128.    Plaintiff also suffered severe emotional distress, including fear, anxiety, humiliation, trauma, and sleep disruption arising from the unlawful entry into her home, her arrest without probable cause, her detention, and the excessive force used during jail intake.

129.    Plaintiff incurred economic losses, including medical expenses, lost income, and costs associated with defending against criminal charges that were ultimately dismissed. Plaintiff further suffered loss of housing, destabilization of her family life, and reputational harm resulting from the baseless criminal accusations.

130.    Plaintiff continues to experience long-term psychological and emotional harm, including ongoing anxiety and loss of trust in law-enforcement institutions, all of which stem from the unconstitutional and tortious conduct described in this Complaint.

131.    Plaintiff seeks all compensatory damages available under federal and Florida law, including damages for physical pain, emotional suffering, loss of liberty, loss of dignity, medical expenses, economic losses, and all other harms proven at trial. Plaintiff further seeks punitive damages against the individual defendants whose conduct was willful, malicious, or in reckless disregard of Plaintiff's constitutional rights.

132.    The harms Plaintiff suffered were the direct and foreseeable result of Defendants'

conduct. The unlawful entry precipitated the unlawful arrest; the unlawful arrest placed Plaintiff into custody; and the custody led to the excessive force during intake. Each injury flowed naturally from the preceding constitutional violation, satisfying the causation requirements under both §1983 and Florida law.

## PRAYER FOR RELIEF

133.    **WHEREFORE,** Plaintiff respectfully demands judgment against all Defendants, jointly and severally where permitted by law, and requests that this Court enter the following relief:

a.   Compensatory damages in an amount to be determined at trial for physical injuries, emotional distress, loss of liberty, reputational harm, medical expenses, economic losses, and all other damages proven at trial;

b.   Punitive damages against the individual Defendants for their willful, malicious, reckless, and unconstitutional conduct;

c.   Declaratory relief that Defendants' actions violated Plaintiff's rights under the United States Constitution and Florida law;

d.   Injunctive relief, as appropriate, to prevent future violations of constitutional rights by Defendants;

e.   Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and all other applicable law;

f.   Pre- and post-judgment interest as allowed by law; and

g.   Such other and further relief as the Court deems just, proper, and equitable.

## JURY DEMAND

134.    Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## **CERTIFICATION**

135.   Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted,

**LLG NATIONAL LAW GROUP**

Dated: June 19, 2026

Robert S. Mactavish, Esquire
Florida Bar Number 0596388
Phoenix Corporate Tower
3003 N. Central Avenue
Suite 685
Phoenix, AZ 85012
P: 575-517-6542
*Attorney for Plaintiff*