# UNITED STATES DISTRICT COURT
for the
Middle District of Florida
Tampa Division

**ALEXIA VICTORIA GAVIN**
*Plaintiff,*

**-v-**

**SHERIFF RICK WELLS, in his official capacity as Sheriff of Manatee County, Florida; DEPUTY ROBERT PEREYRA, JR., in his individual capacity; and JOHN/JANE DOE DEPUTIES 1–5, in their individual capacities,**
*Defendants.*

Case No. 8:26-cv-01794-JSM-GDP

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

**CIVIL ACTION**

*This action alleges, inter alia, violations of the Fourth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, arising from the warrantless and non-consensual entry into Plaintiff Alexia Gavin's home, her arrest without probable cause, the excessive force used against her during jail intake, and the failure of multiple Manatee County deputies to intervene despite having the opportunity and duty to do so. Plaintiff further alleges malicious prosecution based on the continuation of criminal charges unsupported by evidence, as well as state-law torts arising from Defendants' unlawful entry, arrest, and use of force. These violations caused Plaintiff significant physical injury, emotional trauma, economic loss, and destabilization of her family life. Plaintiff seeks redress for these constitutional and statutory violations and for the severe harms inflicted upon her as a result of Defendants' conduct.*

Plaintiff, ALEXIA VICTORIA GAVIN, by and through her attorneys, LLG National Law Group, and by way of this Second Amended Complaint,[1] brings this action for damages and other equitable relief against Defendants, SHERIFF RICK WELLS, in his official capacity as Sheriff

[1] The Court in its Order dated September 17, 2026 (Doc. 16) granted the Defendant's Motion to Dismiss (Doc. 10) without prejudice for the Plaintiff to file a Second Amended Complaint within 14 days. Similarly, in an Endorsed Order of the same date (Doc. 17), the Court granted Defendant Pereyra's Motion to Dismiss (Doc. 15) for the reasons stated in the previous Order (Doc. 16).

of Manatee County, Florida; DEPUTY ROBERT PEREYRA, JR., in his individual capacity; and JOHN/JANE DOE DEPUTIES 1–5, in their individual capacities, alleging as follows:

## INTRODUCTION

1. This civil rights action arises from the warrantless, non-consensual entry into Plaintiff Alexia Gavin's home on March 30, 2024, by deputies of the Manatee County Sheriff's Office ("MCSO"). Deputies entered without a warrant, without consent, and without exigent circumstances, in violation of the Fourth and Fourteenth Amendments and clearly established law prohibiting home entry absent judicial authorization.

2. Deputies falsely asserted that a "capias warrant" existed for Plaintiff's arrest. No such warrant had been issued. Body-camera footage shows deputies repeating this false claim to Plaintiff and to other officers, despite knowing that no judicial officer had authorized an arrest or entry into Plaintiff's home.

3. Deputies failed to comply with Florida's knock-and-announce requirement. Deputy Pereyra knocked but did not identify himself as law enforcement before entering. Plaintiff expressly refused to step outside and did not consent to entry. Deputies entered anyway, following a directive captured on body-camera: "Once we get in the hallway, no talking."

4. The arrest was unsupported by probable cause. Deputies ignored Kelvin's (Plaintiff's ex-boyfriend) admissions of assaulting Plaintiff, ignored Plaintiff's visible injuries, failed to interview livestream witnesses who confirmed Plaintiff was the victim, and omitted exculpatory evidence from the capias request. Deputies also ignored Plaintiff's internal affairs complaint requesting Kelvin's arrest based on his admissions and her injuries.

5. Plaintiff was transported to the Manatee County Jail, where she remained incarcerated for three days. During intake, a correctional officer twisted Plaintiff's wrist while conducting a search, causing immediate pain, swelling, and loss of mobility. Plaintiff repeatedly

reported pain but received no medical evaluation or treatment. Hospital records from HCA Florida Blake Hospital dated April 1, 2024, confirm bilateral wrist sprains consistent with the force used during intake.

6. The criminal case arising from the arrest collapsed. The State Attorney dismissed the felony charge on May 16, 2024, and entered a Nolle Prosequi on March 25, 2025, dismissing the remaining misdemeanor charge. Plaintiff endured arrest, incarceration, physical injury, reputational harm, and destabilization of her family life without any lawful basis.

7. As a direct result of Defendants' conduct, Plaintiff lost her job as a caregiver, lost her apartment, and was forced into an open adoption due to lack of safe housing. Plaintiff continues to suffer physical pain, emotional trauma, economic loss, and long-term psychological harm.

8. Plaintiff also previously filed an internal affairs complaint in October 2022 documenting excessive force, unlawful entry, and physical injury inflicted by MCSO deputies, including a miscarriage confirmed by hospital records. Despite this notice, MCSO failed to implement corrective training or discipline, contributing to the constitutional violations inflicted upon Plaintiff in March 2024.

9. Plaintiff brings this action to obtain redress for the unlawful entry, false arrest, excessive force, failure to intervene, and resulting harms inflicted upon her, and to hold Defendants accountable under 42 U.S.C. § 1983 and Florida law.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the Constitution and laws of the United States, including 42 U.S.C. § 1983, for violations of the Fourth and Fourteenth Amendments. Jurisdiction is also proper under 28 U.S.C. § 1343(a)(3)–(4), which provides original jurisdiction over civil rights actions seeking redress for the deprivation of constitutional rights under color of state law.

11. This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same nucleus of operative facts as the federal constitutional violations: namely, the unlawful entry into Plaintiff's home, her arrest without probable cause, and the use of excessive force during her detention. Exercising supplemental jurisdiction promotes judicial economy, convenience, and fairness.

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(1)–(2) because all Defendants reside in Florida and all events giving rise to Plaintiff's claims occurred in Manatee County, Florida, which lies within the Tampa Division of the Middle District of Florida. The unlawful entry, arrest, detention, and resulting injuries were all inflicted within this District, making venue both proper and convenient.

## PARTIES

13. At all times relevant hereto, Plaintiff Alexia Victoria Gavin is a resident of Bradenton, Florida.

14. At all times relevant hereto, Defendant SHERIFF RICK WELLS is the elected Sheriff of Manatee County and the final policymaker for MCSO with respect to law-enforcement operations, training, supervision, and discipline. He is sued in his official capacity for purposes of Monell-type liability and vicarious liability under Florida law. Sheriff Wells may be served at the Manatee County Sheriff's Office, 600 U.S. Highway 301 Blvd. West, Bradenton, Florida 34205.

15. At all times relevant hereto, Defendant DEPUTY ROBERT PEREYRA, JR. was a sworn deputy sheriff employed by MCSO and acting under color of state law. He participated directly in the unlawful entry and arrest of Plaintiff. He is sued in his individual capacity for violations of clearly established federal constitutional rights. He may be served at the Manatee County Sheriff's Office, 600 U.S. Highway 301 Blvd. West, Bradenton, Florida 34205.

16. At all times relevant hereto, Defendants JOHN/JANE DOE DEPUTIES 1–5 were

sworn deputy sheriffs employed by MCSO who were present during the unlawful entry, arrest, transport, or jail intake of Plaintiff. Each participated in, directed, or failed to intervene in the constitutional violations described herein. They are sued in their individual capacities. Their true identities will be added when ascertained through discovery.

17. The true names and capacities of John/Jane Doe Defendants 1–5 are presently unknown to Plaintiff. The Doe Defendants include MCSO deputies and/or MCSO personnel who participated in, witnessed, or otherwise had direct involvement in the March 29–30, 2024 incident, Plaintiff's arrest and transport, and/or Plaintiff's booking and intake at the Manatee County Jail. Plaintiff has already requested from Defendants the MCSO records and other materials necessary to identify these individuals, including records concerning the March 29–30, 2024 incident, the arrest, transport, and jail intake, but Defendants have not yet produced those materials. Plaintiff therefore presently identifies these Defendants by their roles and conduct rather than by name and will amend the Complaint to substitute their true names and capacities when those identities are disclosed through discovery.

18. Based on the information presently available, the Doe Defendants include, without limitation, the MCSO deputy or deputies who participated in preparing or advancing the allegations used to obtain or justify Plaintiff's arrest; the MCSO deputy or deputies who participated in or witnessed Plaintiff's March 30, 2024 arrest and detention; and the MCSO personnel present during Plaintiff's booking and intake who participated in, witnessed, or failed to intervene in the use of force against Plaintiff. Plaintiff presently lacks sufficient information to assign each unidentified individual a specific Doe number because the records identifying the involved personnel remain in Defendants' possession and have not been produced.

## FACTUAL BACKGROUND

19. On March 29, 2024, deputies of the Manatee County Sheriff's Office ("MCSO")

were dispatched to Plaintiff's residence in response to a domestic-disturbance call involving Plaintiff and her former partner, Kelvin.

20. Upon arrival, deputies interviewed Kelvin, who admitted that he had physically assaulted Plaintiff during the incident. According to the official MCSO report, Kelvin stated that he "snatched [Plaintiff's] phone… pushed [her] on the ground… dragged [her] in the dirt… hit [her] again… [and] used a pressure point under [her] neck…".

20. Kelvin further admitted that he seized Plaintiff's phone to stop her livestream of the assault, walked outside with it, and continued to physically restrain her while she attempted to retrieve it.

21. Plaintiff's sworn affidavit corroborates Kelvin's admissions and describes the assault in detail, including being dragged, struck, choked, and having her phone forcibly taken. Plaintiff's visible injuries were consistent with Kelvin's admissions and with witness statements from individuals who viewed the livestream.

22. Despite Kelvin's admissions, Plaintiff's visible injuries, and corroborating witness statements, deputies treated Plaintiff, not Kelvin, as the aggressor. Deputies failed to document Plaintiff's injuries, failed to interview livestream witnesses, and failed to conduct a proper primary-aggressor assessment.

23. Deputies did not arrest Kelvin, did not seek a warrant for his arrest, and did not document any probable-cause basis to treat Plaintiff as the primary aggressor. Plaintiff later filed an internal affairs complaint requesting Kelvin's arrest based on his admissions and her injuries, but MCSO ignored this request.

24. Deputies prepared a capias request alleging that Plaintiff had threatened Kelvin with a knife. The report omitted Kelvin's admissions of physical violence, omitted Plaintiff's injuries, and omitted the livestream witnesses who confirmed Plaintiff was the victim. The

narrative was materially incomplete and misleading.

25. Upon information and belief, the capias request was drafted without judicial review, and no judge issued a warrant for Plaintiff's arrest.

26. Despite knowing no warrant existed, deputies represented to other officers, and later to Plaintiff, that a capias warrant had been issued. Body-camera footage shows deputies repeating this false claim to justify entry and arrest.

27. On March 30, 2024, deputies returned to Plaintiff's residence to arrest her. Body-camera footage captures Deputy Pereyra instructing another deputy, "Once we get in the hallway, no talking," immediately before approaching Plaintiff's door.

28. Deputies falsely asserted that a capias warrant had been issued. This statement was untrue. No warrant existed, and no judicial officer had authorized entry into Plaintiff's home or Plaintiff's arrest.

29. Deputies failed to comply with Florida's knock-and-announce requirement. Deputy Pereyra knocked but did not identify himself as law enforcement. Plaintiff answered the door, and Deputy Pereyra immediately stated, "Just step out… so we don't have to do this in front of your kids." Plaintiff expressly refused and did not consent to entry.

30. Deputies did not identify any exigent circumstances. The alleged offense had occurred the previous day; Plaintiff was at home with her children; she was calm and cooperative; no threat to life or safety existed; and no evidence was at risk of destruction.

31. Despite the absence of a warrant, consent, or exigency, deputies entered Plaintiff's home, crossed the threshold, and seized her inside her residence. The neighbor asked why Plaintiff was being arrested, and deputies falsely stated, "She has a capias for assault on her boyfriend."

32. The entry violated clearly established Fourth Amendment law prohibiting

warrantless home entry to effect a routine arrest, including the longstanding rule articulated in *Payton v. New York*, 445 U.S. 573 (1980).

33. Deputies arrested Plaintiff inside her home based on a materially incomplete and misleading narrative that contradicted Kelvin's admissions, Plaintiff's injuries, and witness statements. Deputies ignored exculpatory evidence and relied on a fabricated claim of a non-existent warrant.

34. Plaintiff was transported to the Manatee County Jail for booking and intake, where she remained incarcerated for three days.

35. During intake, a correctional officer employed and supervised by MCSO applied unnecessary and excessive force by forcefully twisting Plaintiff's wrist while conducting a search, causing immediate pain, swelling, and loss of mobility.

36. Plaintiff repeatedly reported severe wrist pain but was not provided medical evaluation or treatment. Intake personnel failed to document her injuries, contrary to established jail protocols.

37. Immediately upon release, Plaintiff sought emergency medical care at HCA Florida Blake Hospital on April 1, 2024.

38. Hospital records confirm bilateral wrist sprains consistent with the force used during intake. Plaintiff was instructed to follow up with orthopedics and was prescribed pain management and activity restrictions.

39. As a result of the arrest and ensuing criminal charges, Plaintiff lost her job as a caregiver, lost her apartment, and lacked stable housing for nearly a year. Plaintiff ultimately placed her child into open adoption because she did not have a safe place to live.

40. The felony aggravated assault charge was formally dropped on May 16, 2024.

41. On March 25, 2025, the State Attorney entered a Nolle Prosequi dismissing the

remaining misdemeanor charge of resisting without violence.

42. The criminal proceedings against Plaintiff arose from the allegations advanced by MCSO personnel concerning the March 29, 2024, incident, including the allegation that Plaintiff threatened Kelvin with a knife. Those allegations omitted or disregarded material facts known to MCSO personnel, including Kelvin's admissions that he had physically assaulted Plaintiff, Plaintiff's visible injuries, and corroborating witness evidence. Plaintiff alleges that the continued seizure and prosecution resulting from those allegations were thereby caused and maintained through materially false or misleading information.

43. The criminal charges against Plaintiff were ultimately dismissed, with the felony aggravated assault charge formally dropped on May 16, 2024, and the remaining misdemeanor charge of resisting without violence dismissed by Nolle Prosequi on March 25, 2025. The criminal proceedings terminated without a conviction, plea, or adjudication establishing Plaintiff's guilt.

44. Plaintiff previously filed an internal affairs complaint in October 2022 documenting excessive force, unlawful entry, and physical injury inflicted by MCSO deputies, including a miscarriage confirmed by hospital records. Despite this notice, MCSO failed to implement corrective training or discipline.

45. As a direct and foreseeable result of Defendants' unlawful entry, false arrest, and use of excessive force, Plaintiff suffered significant physical injury to both wrists, accompanied by ongoing pain and functional limitations; severe emotional distress and psychological trauma; reputational harm arising from the arrest, detention, and criminal accusations made against her; the loss of her employment and financial stability; the loss of her housing and the resulting destabilization of her family life; and long-term psychological harm that continues to affect her daily functioning and well-being.

46. Plaintiff's injuries and losses were the foreseeable result of the unlawful entry, false arrest, excessive force, and the initiation and continuation of criminal proceedings based upon materially incomplete and misleading allegations concerning the March 29, 2024, incident.

**COUNT I - 42 U.S.C. §1983**
**UNLAWFUL WARRANTLESS ENTRY (FOURTH AMENDMENT)**
***(Against Deputy Pereyra in his Individual Capacity)***

47. On March 30, 2024, Deputy Robert Pereyra, acting under color of state law and within the course and scope of his employment with the Manatee County Sheriff's Office ("MCSO"), approached Plaintiff's residence to effect an arrest based on a fabricated claim that a "capias warrant" existed for Plaintiff's arrest. No judicial officer issued such a warrant.

48. Body-camera footage shows Deputy Pereyra instructing another deputy, "Once we get in the hallway, no talking," immediately before approaching Plaintiff's door, demonstrating a coordinated plan to enter Plaintiff's home without consent or judicial authorization.

49. Deputy Pereyra knocked on Plaintiff's door but did not identify himself as law enforcement. When Plaintiff answered, Deputy Pereyra stated, "Just step out… so we don't have to do this in front of your kids." Plaintiff expressly refused and did not consent to entry.

50. Deputy Pereyra falsely asserted that a capias warrant had been issued for Plaintiff's arrest. This statement was untrue. No warrant existed, and no judicial officer had authorized entry into Plaintiff's home or Plaintiff's arrest. Deputy Pereyra repeated this false claim to Plaintiff, to other deputies, and to a neighbor who asked why Plaintiff was being arrested.

51. No exigent circumstances existed. The alleged offense had occurred the previous day; Plaintiff was calm, cooperative, and inside her home with her children; no threat to life or safety existed; and no evidence was at risk of destruction. Deputy Pereyra did not identify any exigency because none existed.

52. Despite the absence of a warrant, consent, or exigency, Deputy Pereyra entered

Plaintiff's home, crossed the threshold, and seized her inside her residence. Plaintiff attempted to retreat toward her bedroom, but Deputy Pereyra followed her inside, grabbed her arm, and took her into custody.

53. The warrantless entry into Plaintiff's home violated clearly established Fourth and Fourteenth Amendment law, including the longstanding rule that officers may not enter a private residence to effect an arrest absent a valid warrant or true exigency. *Payton v. New York*, 445 U.S. 573 (1980), has for decades made clear that "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."

54. No reasonable officer could have believed that a fabricated claim of a non-existent capias warrant satisfied the Fourth Amendment's strict requirements for home entry. Deputy Pereyra's conduct was objectively unreasonable and contrary to clearly established law.

55. As a direct and proximate result of Deputy Pereyra's unconstitutional entry and resulting seizure, Plaintiff suffered physical and emotional injuries, economic loss, reputational harm, and other damages recoverable under applicable law.

56. Deputy Pereyra's conduct was willful, wanton, malicious, and in reckless disregard of Plaintiff's constitutional rights, entitling Plaintiff to compensatory damages and punitive damages under 42 U.S.C. § 1983.

**COUNT II - 42 U.S.C. §1983**
**FALSE ARREST / FALSE IMPRISONMENT (FOURTH AMENDMENT)**
***(Against Deputy Pereyra and Those Doe Defendants Who Participated in Plaintiff's Arrest, in Their Individual Capacities)***

57. On March 30, 2024, Deputy Robert Pereyra, together with those Doe Defendant deputies who participated in Plaintiff's arrest, acting under color of state law, arrested and detained Plaintiff without probable cause. The arrest occurred inside Plaintiff's home after deputies unlawfully entered without a warrant, without consent, and without exigent circumstances.

58. At the time of the arrest, the facts known to the arresting deputies did not establish

probable cause to believe Plaintiff had committed the charged offense. The alleged domestic-violence incident had occurred the previous day, and the contemporaneous evidence available to the deputies included Kelvin's admissions that he had physically assaulted Plaintiff, Plaintiff's visible injuries, and witness information corroborating Plaintiff's account.

59. Kelvin admitted to deputies that he physically assaulted Plaintiff, stating that he "snatched [Plaintiff's] phone… pushed [her] on the ground… dragged [her] in the dirt… hit [her] again… [and] used a pressure point under [her] neck." Kelvin further admitted that he seized Plaintiff's phone to stop her livestream of the assault and physically restrained her while she attempted to retrieve it.

60. Plaintiff's sworn affidavit corroborated Kelvin's admissions and described the assault in detail. Livestream witnesses also provided information corroborating Plaintiff's account of the assault. Deputies failed to interview these witnesses, failed to document Plaintiff's injuries, and failed to conduct a proper primary-aggressor assessment.

61. Deputies did not arrest Kelvin, did not seek a warrant for his arrest, and did not document any probable-cause basis to treat Plaintiff as the primary aggressor. Plaintiff later filed an internal affairs complaint requesting Kelvin's arrest based on his admissions and her injuries, but MCSO ignored this request.

62. Deputies prepared a capias request alleging that Plaintiff had threatened Kelvin with a knife. The report omitted Kelvin's admissions of physical violence, omitted Plaintiff's injuries, and omitted the livestream witnesses who confirmed Plaintiff was the victim. The narrative was materially incomplete and misleading.

63. No judge issued a warrant for Plaintiff's arrest. Despite this, deputies falsely asserted - to Plaintiff, to other deputies, and to a neighbor - that a capias warrant existed. Body-camera footage captures deputies repeating this false claim to justify the arrest.

64. Deputies entered Plaintiff's home without consent and without exigent circumstances. Plaintiff expressly refused to step outside and did not consent to entry. The alleged offense had occurred the previous day; Plaintiff was calm and cooperative; no threat to life or safety existed; and no evidence was at risk of destruction.

65. After unlawfully entering Plaintiff's home, deputies arrested her inside her residence. Body-camera footage shows Deputy Pereyra following Plaintiff into her bedroom, grabbing her arm, and taking her into custody.

66. The arrest was effected in reliance upon the false representation that a warrant existed and upon a materially incomplete and misleading account of the March 29, 2024 incident that omitted or disregarded Kelvin's admissions, Plaintiff's injuries, and corroborating witness information. The arresting deputies therefore relied upon materially misleading information rather than the full circumstances known to them at the time.

67. Following the arrest, Plaintiff was transported to the Manatee County Jail and detained for three days. During this detention, Plaintiff suffered physical pain, emotional distress, and the cascading harms described herein.

68. The criminal charges arising from the arrest were later abandoned. The felony aggravated assault charge was dropped on May 16, 2024, and the State Attorney entered a Nolle Prosequi dismissing the remaining misdemeanor charge on March 25, 2025. The constitutional violation alleged in this Count arose from the circumstances known to the arresting deputies at the time of Plaintiff's arrest.

69. Even under the "arguable probable cause" standard applicable to qualified immunity, the facts alleged above do not establish an objectively reasonable basis for believing that Plaintiff committed the charged offense. The arresting deputies knew of Kelvin's admissions that he had physically assaulted Plaintiff, Plaintiff's visible injuries, and information corroborating

her account, yet proceeded with Plaintiff's arrest based upon a materially incomplete and misleading account of the incident.

70. The conduct of Deputy Pereyra and those Doe Defendant deputies who participated in Plaintiff's arrest was willful, malicious, reckless, and in deliberate disregard of Plaintiff's constitutional rights. Their conduct caused Plaintiff to suffer loss of liberty and other damages, including emotional distress, reputational harm, economic loss, loss of housing, and destabilization of her family life.

71. Plaintiff is entitled to compensatory damages and punitive damages under 42 U.S.C. § 1983 for the violation of her clearly established Fourth and Fourteenth Amendment rights.

**COUNT III - 42 U.S.C. §1983**
**MALICIOUS PROSECUTION / UNLAWFUL SEIZURE PURSUANT TO LEGAL PROCESS (FOURTH AMENDMENT)**
***(Against Deputy Pereyra and Those Doe Defendants Who Participated in Initiating or Advancing the Criminal Proceedings, in Their Individual Capacities)***

72. Defendant Deputy Robert Pereyra and those Doe Defendants who participated in preparing, submitting, communicating, or otherwise advancing the criminal allegations against Plaintiff acted under color of state law and caused Plaintiff to be subjected to criminal legal process and continued seizure in violation of the Fourth Amendment.

73. Before Plaintiff was arrested, MCSO deputies prepared and advanced a materially incomplete and misleading account of the March 29, 2024, domestic incident, alleging that Plaintiff had threatened Kelvin with a knife while omitting or disregarding material facts known to the deputies, including Kelvin's admissions that he had physically assaulted Plaintiff, Plaintiff's visible injuries, and statements from witnesses who observed the incident.

74. The deputies also represented that a "capias warrant" existed for Plaintiff's arrest when, in fact, no such warrant had been issued by any judicial officer. Deputies repeated that representation to Plaintiff and others and relied upon it in effecting Plaintiff's arrest.

75. Upon information and belief, Defendant Pereyra and the Doe Defendants who participated in preparing or transmitting the charging information knew, or acted with reckless disregard for whether, the factual narrative being used to initiate or advance criminal proceedings against Plaintiff was materially false and misleading.

76. The legal process that resulted in Plaintiff's continued detention was constitutionally infirm because it was based, in material part, upon materially false statements and material omissions concerning the underlying incident and the alleged basis for Plaintiff's arrest.

77. The false and misleading information was material to the continued seizure because, absent the materially inaccurate account presented or advanced by Defendants, the information available to the judicial officer would not have established a constitutionally sufficient basis for Plaintiff's continued detention.

78. Following her warrantless arrest, Plaintiff was transported to the Manatee County Jail and remained detained for approximately three days. During that period, Plaintiff was subjected to judicial proceedings and continued detention pursuant to legal process arising from the criminal allegations advanced by Defendants. The continued seizure was based, in material part, on the allegations and information supplied or advanced by MCSO personnel.

79. The felony aggravated-assault charge arising from the incident was formally dropped on May 16, 2024. On March 25, 2025, the State Attorney entered a Nolle Prosequi dismissing the remaining misdemeanor charge of resisting without violence.

80. The criminal proceedings therefore formally terminated without a conviction or admission of guilt by Plaintiff on the charges that resulted in her seizure.

81. Plaintiff's continued seizure pursuant to constitutionally infirm legal process violated her clearly established Fourth and Fourteenth Amendment right to be free from unreasonable seizure pursuant to legal process.

82. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, reputational harm, economic loss, loss of employment and housing, destabilization of her family life, and other compensable injuries and damages.

83. The conduct of Defendant Pereyra and the Doe Defendants responsible for initiating or advancing the constitutionally infirm legal process was intentional, reckless, and in deliberate disregard of Plaintiff's clearly established constitutional rights.

84. Plaintiff is entitled to compensatory damages, punitive damages against the individual Defendants as permitted by law, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and all other relief available under 42 U.S.C. § 1983.

**COUNT IV - 42 U.S.C. §1983**
**EXCESSIVE FORCE (FOURTH AMENDMENT)**
***(Against Deputy Pereyra and Those Doe Defendants Who Participated in or Were Present for the Use of Force During Plaintiff's Jail Intake, in Their Individual Capacities)***

85. On March 30, 2024, after unlawfully arresting Plaintiff inside her home, Deputy Robert Pereyra and Doe Defendant Deputies 1–5 transported Plaintiff to the Manatee County Jail for booking and intake. Plaintiff remained incarcerated for approximately three days. Deputy Pereyra and those Doe Defendants who were present during the intake process are the Defendants against whom the claims in this Count are asserted.

86. During the intake process, Plaintiff was compliant, restrained, and posed no threat to officer safety or institutional security. Plaintiff followed all commands and did not resist or engage in any conduct that would justify the use of physical force.

87. Despite Plaintiff's compliance, a female correctional officer employed and supervised by MCSO applied unnecessary and excessive force by forcefully twisting Plaintiff's wrist while conducting a search. The officer applied torque and pressure far beyond what was necessary for any legitimate law-enforcement purpose.

88. The wrist-twisting force caused immediate, sharp pain, swelling, and loss of

mobility in both wrists. Plaintiff cried out in pain and repeatedly reported her injuries to intake personnel, but officers failed to provide medical evaluation or treatment and failed to document her injuries, contrary to established jail protocols.

89. Plaintiff's injuries were severe enough that immediately upon release, she sought emergency medical treatment at HCA Florida Blake Hospital on April 1, 2024. Hospital records confirm bilateral wrist sprains consistent with the excessive force inflicted during intake. Plaintiff was instructed to follow up with orthopedics and was prescribed pain management and activity restrictions.

90. The force used against Plaintiff was objectively unreasonable under clearly established Fourth and Fourteenth Amendment law. Plaintiff was fully restrained, compliant, and posed no threat. The twisting of her wrist served no legitimate penological or law-enforcement purpose and was applied solely to inflict pain.

91. Courts have long held that officers may not use gratuitous, unnecessary, or disproportionate force against a restrained, compliant, and non-threatening individual. The gratuitous application of force in these circumstances violates clearly established Fourth and Fourteenth Amendment rights.

92. Deputy Pereyra and those Doe Defendants present during the intake process either directly participated in the use of force against Plaintiff or observed the use of force and had a realistic opportunity to intervene but failed to take reasonable steps to prevent or stop it. Those Defendants who personally applied the force are liable for the excessive force inflicted upon Plaintiff, and those who observed the unconstitutional force and failed to intervene are liable under 42 U.S.C. § 1983 for their failure to do so.

93. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injury, pain, swelling, loss of mobility, medical expenses, emotional distress, and long-term

functional impairment, as well as the broader harms described throughout this Complaint, including loss of employment, loss of housing, and destabilization of her family life.

94. The conduct of the individual Defendants was willful, malicious, reckless, and in deliberate disregard of Plaintiff's constitutional rights, entitling Plaintiff to compensatory and punitive damages under 42 U.S.C. § 1983.

**COUNT V - 42 U.S.C. §1983**
**MONELL LIABILITY — FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE**
***(Against Defendant Sheriff Wells in his Official Capacity)***

95. At all times relevant, Sheriff Rick Wells, in his official capacity as Sheriff of Manatee County, Florida, was the final policymaker for the Manatee County Sheriff's Office ("MCSO") with respect to law-enforcement operations, training, supervision, discipline, policies governing deputy conduct, and procedures governing detainee intake and care.

96. The constitutional violations inflicted upon Plaintiff, including the warrantless entry into her home, false arrest without probable cause, excessive force during jail intake, and failure of MCSO personnel to intervene, were caused by MCSO policies, customs, practices, and deliberate failures in training, supervision, and discipline for which Sheriff Wells, as the final policymaker, was responsible.

97. MCSO maintained and permitted a custom or practice under which deputies failed to adequately verify the existence and scope of purported judicial authorization before entering private residences to effectuate arrests. In Plaintiff's case, MCSO personnel represented that a "capias warrant" existed when no such warrant had been issued, entered Plaintiff's home without a warrant, without consent, and without exigent circumstances, and arrested Plaintiff inside her home.

98. MCSO further maintained and permitted practices concerning probable-cause investigations and arrest documentation that failed to require deputies to account for material

exculpatory evidence known to them before seeking or advancing criminal charges. In Plaintiff's case, MCSO personnel proceeded against Plaintiff despite Kelvin's admissions that he had physically assaulted her, Plaintiff's visible injuries, and witness information corroborating her account, while advancing an account that alleged Plaintiff had threatened Kelvin with a knife and omitted or disregarded those material facts.

99. Sheriff Wells failed to adequately train MCSO deputies concerning the constitutional limits on warrantless entry into private residences, including the requirement of a warrant or valid exception to the warrant requirement before entering a home to effectuate an arrest. The circumstances alleged herein - including the failure to verify the purported capias, the failure to obtain consent, the failure to identify lawful authority for entry, and the absence of exigent circumstances - demonstrate the practical consequences of that training deficiency.

100. Sheriff Wells also failed to adequately train MCSO deputies concerning domestic-violence investigations and the identification of the primary aggressor, including the obligation to consider available evidence concerning injuries, admissions by involved parties, and corroborating witnesses. MCSO personnel failed to adequately account for Kelvin's admissions of assault, Plaintiff's visible injuries, and witness information before treating Plaintiff as the aggressor and proceeding with her arrest.

101. Sheriff Wells further failed to adequately train and supervise MCSO personnel concerning the constitutional limitations on the use of force against restrained and compliant detainees during booking and intake. Plaintiff was restrained and compliant during intake, yet MCSO personnel subjected her to force that caused bilateral wrist injuries. The circumstances further demonstrate deficiencies in training and supervision concerning the recognition, prevention, and reporting of unnecessary force against detainees.

102. Sheriff Wells failed to adequately train and supervise MCSO personnel concerning

their obligation to intervene when another officer or MCSO employee uses unconstitutional force. The failure of personnel present during Plaintiff's intake to prevent or stop the force used against her, despite Plaintiff's compliance and the circumstances alleged herein, further demonstrates a deficiency in MCSO's training, supervision, and enforcement of constitutional standards.

103. Sheriff Wells had actual or constructive notice of deficiencies in MCSO personnel's compliance with constitutional requirements before the events giving rise to this action. In October 2022, Plaintiff filed an internal-affairs complaint with MCSO documenting unlawful entry, excessive force, physical injury, and a miscarriage allegedly caused by MCSO deputies. Hospital records corroborated the physical injuries described in that complaint. Despite that notice, MCSO did not adequately correct the deficiencies identified, implement effective remedial training, or take corrective disciplinary action sufficient to prevent similar constitutional violations.

104. Upon information and belief, Plaintiff is aware of publicly filed civil-rights actions and other complaints involving MCSO personnel alleging unlawful arrests, unlawful seizures, warrantless or improper residential entries, excessive force, and related constitutional violations. Those matters, together with Plaintiff's October 2022 internal-affairs complaint and the violations alleged herein, provide a reasonable basis to believe that MCSO has received additional notice of constitutional deficiencies in the conduct, training, supervision, and discipline of its personnel. The underlying complaints, internal-affairs records, investigative files, disciplinary records, training records, and supervisory responses concerning such incidents are within Defendants' possession and control and are not presently available to Plaintiff. Plaintiff therefore pleads these matters upon information and belief and seeks discovery concerning the nature, frequency, notice, investigation, and disposition of such incidents.

105. The need for additional or corrective training, supervision, and discipline was apparent from information available to MCSO and Sheriff Wells, including Plaintiff's October

2022 internal-affairs complaint, publicly documented civil-rights litigation involving MCSO personnel, and the recurrence of similar constitutional concerns alleged in this action. Despite that notice, Sheriff Wells and MCSO failed to take reasonable corrective measures sufficient to prevent recurrence. The subsequent conduct alleged herein - including the unlawful entry into Plaintiff's home, reliance upon a purported warrant that did not exist, materially deficient probable-cause information, excessive force during jail intake, and failure to intervene - demonstrates that the identified deficiencies were not effectively addressed.

106. The foregoing policies, customs, practices, and deliberate failures were a moving force behind the constitutional violations suffered by Plaintiff. The recurrence of constitutionally deficient conduct after prior notice demonstrates that the deficiencies were not merely isolated acts of individual employees, but resulted from MCSO's failure to establish, enforce, and meaningfully implement adequate constitutional standards governing residential entry, probable-cause investigations, arrest practices, use of force, intervention, supervision, and discipline.

107. As a direct and proximate result of the foregoing Monell violations, Plaintiff suffered physical injury, pain, medical expenses, emotional distress, loss of employment, loss of housing, reputational harm, family disruption, and other damages recoverable under 42 U.S.C. § 1983. Plaintiff is entitled to compensatory damages, reasonable attorneys' fees and costs under 42 U.S.C. § 1988, and all other relief available under law.

**COUNT VI**
**FALSE ARREST / FALSE IMPRISONMENT (FLORIDA LAW)**
***(Against Defendant Sheriff Wells in his Official Capacity)***

108. On March 30, 2024, deputies of the Manatee County Sheriff's Office ("MCSO"), including Deputy Robert Pereyra and Doe Deputies 1–5, acting within the course and scope of their employment, intentionally restrained and detained Plaintiff against her will and without lawful authority, constituting false arrest and false imprisonment under Florida law.

109. At the time of the arrest, the arresting deputies did not have probable cause to believe Plaintiff had committed the offense for which she was arrested. The alleged domestic-violence incident had occurred the previous day, and the information available to the deputies included Kelvin's admissions that he had physically assaulted Plaintiff, Plaintiff's visible injuries, and witness information corroborating Plaintiff's account.

110. Kelvin admitted to deputies that he physically assaulted Plaintiff, stating that he "snatched [Plaintiff's] phone… pushed [her] on the ground… dragged [her] in the dirt… hit [her] again… [and] used a pressure point under [her] neck." Kelvin further admitted that he seized Plaintiff's phone to stop her livestream of the assault and physically restrained her while she attempted to retrieve it.

111. Plaintiff's sworn affidavit corroborated Kelvin's admissions and described the assault in detail. Livestream witnesses also provided information corroborating Plaintiff's account. Deputies failed to adequately investigate that evidence, failed to document Plaintiff's injuries, and failed to conduct a proper primary-aggressor assessment before proceeding against Plaintiff.

112. Deputies did not arrest Kelvin, did not seek a warrant for his arrest, and did not document any probable-cause basis to treat Plaintiff as the primary aggressor. Plaintiff later filed an internal-affairs complaint requesting Kelvin's arrest based on his admissions and her injuries, but MCSO did not take corrective action in response to that complaint.

113. Deputies prepared a capias request alleging that Plaintiff had threatened Kelvin with a knife. The report omitted Kelvin's admissions of physical violence, omitted Plaintiff's injuries, and omitted the livestream witnesses who corroborated Plaintiff's account. The resulting narrative was materially incomplete and misleading.

114. No judge issued a warrant for Plaintiff's arrest. Despite this, deputies represented to Plaintiff, other deputies, and a neighbor that a capias warrant existed. Body-camera footage

captures deputies repeating this representation in connection with Plaintiff's arrest.

115. Deputies entered Plaintiff's home without a warrant, without consent, and without exigent circumstances. Plaintiff expressly refused to step outside and did not consent to entry. The alleged offense had occurred the previous day; Plaintiff was calm and cooperative; no threat to life or safety existed; and no evidence was at risk of destruction.

116. After unlawfully entering Plaintiff's home, deputies arrested her inside her residence. Body-camera footage shows Deputy Pereyra following Plaintiff into her bedroom, grabbing her arm, and taking her into custody.

117. The arrest and resulting detention were without lawful authority. The arresting deputies lacked probable cause to arrest Plaintiff and effected the arrest inside her home without a warrant, without consent, and without exigent circumstances. Under Florida law, the resulting restraint constituted false arrest and false imprisonment.

118. Following the arrest, Plaintiff was transported to the Manatee County Jail and detained for approximately three days. During this detention, Plaintiff suffered loss of liberty, physical pain, emotional distress, and other damages resulting from the unlawful arrest and detention.

119. The criminal charges arising from the arrest were later abandoned. The felony aggravated-assault charge was dropped on May 16, 2024, and the State Attorney entered a Nolle Prosequi dismissing the remaining misdemeanor charge on March 25, 2025. These subsequent events are consistent with the termination of the criminal proceedings, but Plaintiff's false-arrest and false-imprisonment claims arise from the lack of lawful authority for her arrest and detention at the time those acts occurred.

120. At all times relevant, Deputy Pereyra and those Doe Deputies who participated in Plaintiff's arrest and detention were acting within the course and scope of their employment with

MCSO. Under Florida law, Sheriff Rick Wells, in his official capacity, is vicariously liable for the tortious acts of his deputies committed within the course and scope of their employment.

121. As a direct and proximate result of the unlawful arrest and detention, Plaintiff suffered loss of liberty, physical injury, emotional trauma, reputational harm, economic loss, loss of housing, destabilization of her family life, and other damages recoverable under Florida law.

122. Plaintiff is entitled to recover compensatory damages and all other relief available under Florida law.

**COUNT VII**
**BATTERY (FLORIDA LAW)**
***(Against Defendant Sheriff Wells in his Official Capacity)***

123. At the Manatee County Jail on March 30, 2024, during Plaintiff's booking and intake, a female correctional officer employed by the Manatee County Sheriff's Office intentionally made harmful and offensive physical contact with Plaintiff by forcefully twisting Plaintiff's wrist during the search process. The correctional officer was acting within the course and scope of her employment with the Manatee County Sheriff's Office at all relevant times.

124. At the time of the contact, Plaintiff was compliant with the intake process, was restrained and under the control of law-enforcement personnel, posed no threat to the correctional officer or others, and was following instructions without resistance.

125. Despite Plaintiff's compliance and lack of resistance, the correctional officer forcefully twisted Plaintiff's wrist with substantial torque and pressure beyond that reasonably necessary to conduct a search or maintain institutional safety and security. The contact was intentional, harmful, and offensive, and was made without Plaintiff's consent.

126. The force caused Plaintiff immediate sharp pain, swelling, and loss of mobility in both wrists. Plaintiff cried out and reported her injuries following the incident. Plaintiff's injuries were subsequently documented by medical professionals when she was treated at HCA Florida

Blake Hospital on April 1, 2024.

127. Medical records from that treatment documented bilateral wrist sprains and resulted in orthopedic follow-up, pain medication, and activity restrictions. The medical documentation provides independent, third-party corroboration that Plaintiff sustained physical injury to her wrists shortly after the forceful contact during the jail intake process.

128. The correctional officer's intentional physical contact with Plaintiff was not consented to and was not privileged or justified by any legitimate law-enforcement, search, safety, or security purpose under the circumstances alleged herein. The intentional twisting of Plaintiff's wrist while she was compliant, restrained, and non-resistant therefore constituted a battery under Florida law.

129. At all relevant times, the correctional officer was acting within the course and scope of her employment with the Manatee County Sheriff's Office and in furtherance of the duties assigned to her. Accordingly, Sheriff Rick Wells, in his official capacity, is vicariously liable for the tortious conduct of the correctional officer under applicable Florida law.

130. As a direct and proximate result of the battery, Plaintiff suffered bilateral wrist injuries, pain, swelling, loss of mobility and function, medical expenses, physical and emotional suffering, and other damages, including the additional economic and life consequences alleged herein.

131. Plaintiff is entitled to recover all damages available under Florida law, together with taxable costs and such other relief as the Court deems just and proper.

## COUNT VIII
## NEGLIGENT TRAINING, SUPERVISION, AND OPERATIONAL OVERSIGHT (FLORIDA LAW)
***(Against Defendant Sheriff Wells in his Official Capacity)***

132. At all times relevant, Sheriff Rick Wells, in his official capacity as Sheriff of Manatee County, was responsible for the administrative and operational oversight of the Manatee

County Jail, including the supervision of correctional personnel assigned to intake, booking, detainee handling, and the implementation of established jail policies and procedures.

133. Sheriff Wells, through the Manatee County Sheriff's Office, owed Plaintiff a duty to exercise reasonable care in the implementation, supervision, and enforcement of established procedures governing the safe handling of detainees, the use of force during intake, the recognition and reporting of detainee injuries, and the implementation of established medical-screening and referral procedures.

134. Sheriff Wells breached those duties by failing to adequately implement and enforce operational procedures governing the handling of restrained and compliant detainees, failing to adequately supervise personnel responsible for detainee intake and handling, and failing to ensure that established procedures concerning the use of force and response to reported injuries were followed.

135. The operational deficiencies included inadequate implementation and enforcement of procedures governing the use of force against restrained detainees, the prohibition of unnecessary physical force during intake, the reporting and documentation of detainee injuries, and the appropriate response when a detainee reports significant pain or injury.

136. On March 30, 2024, during Plaintiff's intake at the Manatee County Jail, a female correctional officer employed by the Manatee County Sheriff's Office forcefully twisted Plaintiff's wrist while conducting a search, applying torque and pressure beyond what was reasonably necessary under the circumstances. Plaintiff was compliant, restrained, and posed no threat at the time the force was used.

137. Following the use of force, Plaintiff experienced immediate sharp pain, swelling, and loss of mobility in both wrists. Plaintiff cried out and reported her injuries. Plaintiff was subsequently treated at HCA Florida Blake Hospital on April 1, 2024, where medical professionals

documented bilateral wrist sprains and provided orthopedic follow-up, pain medication, and activity restrictions.

138. Despite Plaintiff's reports of severe wrist pain and visible symptoms, intake personnel failed to ensure that Plaintiff received appropriate medical evaluation or treatment before her hospital visit. The failure to follow established procedures for recognizing, documenting, and responding to Plaintiff's reported injuries was consistent with the operational and supervisory deficiencies alleged herein.

139. Sheriff Wells knew or should have known of the need for adequate supervision and enforcement of procedures governing detainee handling, the use of force during intake, and the response to reported injuries. Despite that knowledge, Sheriff Wells failed to take reasonable corrective measures to ensure that personnel complied with established operational procedures and safety requirements.

140. Sheriff Wells was also on actual and constructive notice of deficiencies concerning the conduct of MCSO personnel. In October 2022, Plaintiff filed an internal-affairs complaint documenting unlawful entry, excessive force, physical injury, and a miscarriage allegedly caused by MCSO deputies. Despite that notice, Sheriff Wells failed to take reasonable corrective measures sufficient to prevent similar deficiencies in the handling and treatment of Plaintiff during the March 2024 incident.

141. The negligent acts and omissions alleged herein concern the implementation, enforcement, supervision, and operational oversight of established procedures governing detainee handling and intake practices. Plaintiff does not challenge the formulation of governmental policy or seek to impose liability based solely upon discretionary decisions concerning the development of law-enforcement policy. Rather, Plaintiff alleges that Defendants negligently failed to implement and enforce reasonable operational procedures and to adequately supervise personnel

responsible for carrying them out.

142. The negligent operational oversight, supervision, and implementation failures described above were a direct and proximate cause of the physical injuries Plaintiff sustained during the jail intake process, including bilateral wrist sprains, pain, swelling, loss of mobility, medical expenses, and related physical and emotional harm.

143. As a further direct and proximate result of the negligence alleged herein, Plaintiff suffered additional damages, including emotional distress, loss of employment, loss of housing, and disruption and destabilization of her family life, in amounts to be proven at trial.

144. The negligent acts and omissions alleged herein were committed by employees of the Manatee County Sheriff's Office acting within the course and scope of their employment. To the extent permitted by Florida law, Sheriff Wells, in his official capacity, is liable for the resulting damages pursuant to the waiver of sovereign immunity contained in Florida Statutes § 768.28.

145. Plaintiff is entitled to recover compensatory damages and all other relief available under Florida law.

**COUNT IX**
**FAILURE TO INTERVENE (42 U.S.C. § 1983)**
***(Against Defendants Doe Deputies 1–5)***

146. On March 30, 2024, Doe Defendant Deputies 1–5, acting under color of state law and within the course and scope of their employment with the Manatee County Sheriff's Office ("MCSO"), were present during the events giving rise to Plaintiff's constitutional claims, including the entry into Plaintiff's home, her arrest, and, as to those Doe Defendants who were present at the Manatee County Jail, the use of force against Plaintiff during intake.

147. Each Doe Defendant who was present during the relevant event knew, observed, or had reason to know that another MCSO officer was engaging in conduct that violated Plaintiff's constitutional rights and had a realistic opportunity to intervene and take reasonable steps to

prevent or stop the violation. The constitutional violations included:

a. the unlawful entry into Plaintiff's home without a warrant, consent, or exigent circumstances;

b. the arrest without probable cause based on a fabricated claim of a non-existent capias warrant; and

c. the use of excessive force inflicted during jail intake when a correctional officer forcefully twisted Plaintiff's wrist while she was restrained, compliant, and posed no threat.

148. With respect to the entry and arrest, the participating deputies represented that a "capias warrant" existed for Plaintiff's arrest even though no judge had issued such a warrant. Those Doe Defendants who were present and knew or had reason to know that no warrant had been issued had a realistic opportunity to correct the false representation, object to the unlawful entry, prevent the entry, or otherwise stop the resulting constitutional violation, but failed to intervene.

149. Plaintiff expressly refused to step outside and did not consent to entry. Despite Plaintiff's refusal, deputies entered her home and proceeded to arrest her inside the residence. Those Doe Defendants who were present during the entry knew or had reason to know that Plaintiff had not consented to the entry and had a realistic opportunity to prevent or stop the unlawful entry, but failed to take reasonable steps to do so.

150. After entering Plaintiff's home, deputies followed Plaintiff into her bedroom and took her into custody. The arrest was effected without a warrant, without consent, without exigent circumstances, and without probable cause. Those Doe Defendants who were present during the arrest knew or had reason to know of the circumstances surrounding the arrest and had a realistic opportunity to prevent or stop the unlawful seizure, but failed to intervene.

151. During Plaintiff's intake at the Manatee County Jail, a female correctional officer forcefully twisted Plaintiff's wrist while conducting a search, causing immediate pain, swelling, and loss of mobility. Plaintiff was compliant, restrained, and posed no threat. Those Doe Defendants who were present during the intake process observed, knew of, or had reason to know that excessive force was being used and had a realistic opportunity to intervene or otherwise take reasonable steps to prevent or stop the force, but failed to do so.

152. Plaintiff immediately reported severe wrist pain following the use of force and experienced swelling and loss of mobility. Those Doe Defendants who were present during the intake process and had a realistic opportunity to take reasonable steps to prevent further harm or obtain assistance nevertheless failed to intervene. Plaintiff was subsequently treated at HCA Florida Blake Hospital, where medical professionals documented bilateral wrist sprains and provided orthopedic follow-up, pain medication, and activity restrictions.

153. Under clearly established Eleventh Circuit law, an officer who is present when another officer violates a person's constitutional rights may be held liable under 42 U.S.C. § 1983 when the officer knows or has reason to know that the constitutional violation is occurring and has a realistic opportunity to intervene but fails to take reasonable steps to prevent or stop the violation.

154. The failures of Doe Defendants 1–5 to intervene allowed the unlawful entry, unlawful arrest, and excessive force to occur and continue, directly and proximately causing Plaintiff to suffer loss of liberty, physical injuries, pain, emotional distress, reputational harm, economic loss, loss of housing, disruption and destabilization of her family life, and other damages recoverable under 42 U.S.C. § 1983.

155. The conduct of those Doe Defendants who knowingly failed to intervene despite having knowledge of the constitutional violations and a realistic opportunity to prevent or stop them was willful, reckless, and in deliberate disregard of Plaintiff's clearly established

constitutional rights. Plaintiff is therefore entitled to compensatory damages and, where legally available, punitive damages under 42 U.S.C. § 1983.

## DAMAGES

156. As a direct and proximate result of Defendants' conduct, Plaintiff suffered significant physical injuries, including bilateral wrist sprains, acute pain, swelling, reduced mobility, and the need for medical evaluation, orthopedic follow-up, medication, and activity restrictions. These injuries have impaired Plaintiff's daily functioning and limited her ability to perform routine tasks.

157. Plaintiff also suffered emotional distress, including fear, anxiety, humiliation, trauma, and sleep disruption arising from the unlawful entry into her home, her arrest and detention, and the excessive force used against her during jail intake. These emotional harms were compounded by the loss of safety and security in her own home and the trauma associated with being seized in the presence of her children.

158. Plaintiff incurred economic losses, including medical expenses, lost income, and expenses associated with responding to and defending against the criminal charges arising from her arrest. Plaintiff further suffered loss of housing, destabilization of her family life, and reputational harm arising from the arrest, detention, and criminal accusations made against her.

159. Plaintiff continues to experience psychological and emotional effects arising from the events alleged herein, including anxiety, hypervigilance, and diminished trust in law-enforcement institutions. These harms have materially affected Plaintiff's quality of life and, to the extent supported by the evidence at trial, have required or may require continuing care and treatment.

160. Plaintiff seeks all compensatory damages available under federal and Florida law,

including damages for physical pain and suffering, emotional distress, loss of liberty, loss of dignity, medical expenses, lost income, economic losses, reputational harm, and all other damages proven at trial. Plaintiff further seeks punitive damages against those individual Defendants whose conduct is proven to have been willful, malicious, or in reckless disregard of Plaintiff's constitutional rights, to the extent permitted by law.

161. The injuries and damages alleged herein were proximately caused by Defendants' conduct. The unlawful entry and resulting seizure contributed to Plaintiff's arrest and detention; the arrest and detention resulted in Plaintiff's confinement at the Manatee County Jail; and the circumstances of that confinement included the use of force that caused Plaintiff's documented wrist injuries. Plaintiff further alleges that the individual constitutional violations and related tortious conduct independently caused additional physical, emotional, economic, and dignitary harms. The precise allocation of damages among Defendants and claims is a matter for discovery and proof at trial.

## PRAYER FOR RELIEF

162. **WHEREFORE,** Plaintiff respectfully demands judgment against the Defendants liable for the respective claims asserted herein and requests that this Court enter judgment and award the following relief:

a. Compensatory damages in an amount to be determined at trial for physical injuries, physical pain and suffering, emotional distress, loss of liberty, loss of dignity, reputational harm, medical expenses, lost income, economic losses, and all other damages proven at trial;

b. Punitive damages against those individual Defendants whose conduct is proven to have been willful, malicious, or in reckless disregard of Plaintiff's constitutional rights, to the extent permitted by law;

c. Declaratory relief, to the extent authorized by law, declaring that the acts and omissions alleged herein violated Plaintiff's rights under the United States Constitution and applicable Florida law;

d. Such prospective injunctive or other equitable relief as may be authorized by law and appropriate to prevent ongoing or future violations of Plaintiff's constitutional rights;

e. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and all other applicable law;

f. Pre-judgment and post-judgment interest as allowed by law; and

g. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

163. Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully Submitted,

Dated: September 28, 2026

**LLG NATIONAL LAW GROUP**

Robert S. Mactavish
Florida Bar Number 0596388
Phoenix Corporate Tower
3003 N. Central Avenue
Suite 685
Phoenix, AZ 85012
P: 575-517-6542
robert.mactavish@llgnational.com
*Attorney for Plaintiffs*